## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

AUTO-OWNERS INSURANCE
COMPANY,

      Plaintiff,

v.                                          Case No. 3:14-cv-1182-J-32MCR

ELITE HOMES, INC., a Florida
Corporation, JOSEPH A. CROZIER, a
married couple, and EMILY CROZIER,
a married couple,

      Defendants.

_____

### O R D E R

This declaratory judgment action concerning a commercial general liability insurer's duty to defend and the "your work" exclusion is before the Court on Plaintiff Auto-Owners Insurance Company's Motion for Summary Judgment (Doc. 16) and Defendant Elite Homes, Inc.'s Cross-Motion for Summary Judgment (Doc. 19).[1] Defendants Joseph and Emily Crozier did not file a response in opposition to summary judgment. On October 23, 2015, the Court heard oral argument on the pending motions, the record of which is incorporated by reference. (Doc. 27).

_____

[1] Elite Homes moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(f)(1) in its response in opposition to summary judgment. (Doc. 19 at 8).

## I.   BACKGROUND

### A.   Underlying Lawsuit

In March 2007, Joseph and Emily Crozier contracted with Elite Homes, Inc. to build them a single family residence in Jacksonville Beach. (Doc. 16 at 23, ¶ 5). After the house was completed, the windows leaked. (Id. at ¶ 6). Elite Homes tried to fix the problems, but the repairs allegedly failed. (Id. at ¶ 7). In June 2014, the Croziers sued Elite Homes in state court for breach of contract and negligence.[2] Elite Homes tendered the claim to its commercial general liability insurance carrier, Auto-Owners Insurance Company, seeking coverage for any liability and a defense to the state court suit. (Doc. 1 at 4). Auto-Owners is providing a defense but contends that Elite Homes' policy does not cover the damages claimed by the Croziers.[3] (Id.). Auto-Owners therefore filed this suit seeking a declaratory judgment that it owes Elite Homes neither a duty to defend nor indemnify.[4] (Id. at 9). By agreement of the parties, these two issues were bifurcated. (Docs. 12, 15).

---

[2] The underlying lawsuit is currently pending in the Circuit Court in Duval County, Florida, Crozier v. Elite Homes, Inc., Case No. 16-2014-CA-3913 Div. CV-E (Fla. Cir. Ct. 2014). (Doc. 16 at 2).

The Croziers' attorney, William Douglas Stanford, Jr., was present for the hearing on the motions for summary judgment, including the discussion regarding coverage issues.

[3] The state court suit is set for trial in March 2016 before the Honorable James H. Daniel. Both parties cite to provisions of the Croziers' amended complaint, which is the operative pleading.

[4] Auto-Owners filed this declaratory judgment action in federal court pursuant to 28 U.S.C. § 1332. (Doc. 1 at 1).

Auto-Owners now moves for summary judgment on the issue of its duty to defend. (Doc. 16). Elite Homes filed a response in opposition, arguing the Court should deny Auto-Owners' motion and grant Elite Homes summary judgment on the duty to defend instead (Doc. 19), to which Auto-Owners replied (Doc. 22).

### B.    Auto-Owners Policy Provisions

The Auto-Owners policy (Doc. 1-2) covers "property damage" that occurs within the policy period. It defines "property damage" as:

> a. <u>Physical injury to tangible property, including all resulting loss of use of that property</u>. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. <u>Loss of use of tangible property that is not physically injured</u>. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

(<u>Id.</u> at 22) (emphasis added).

The policy excludes from coverage damage to "your work," which is defined as:

> (1) <u>Work or operations performed by you [the insured] or on your behalf</u>; and
>
> (2) Materials, parts or equipment furnished in connection with such work or operations.

(<u>Id.</u> at 23) (emphasis added). "Your work" includes:

> (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
>
> (2) The providing of or failure to provide warnings or instructions.

(<u>Id.</u>).

The "Damage To Your Work" provision excludes from coverage "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"[5] (Id. at 8) (emphasis added).

The policy also contains an "impaired property" exclusion that is primarily directed to damages for loss of use. (Id.). Specifically, the "Damage To Impaired Property Or Property Not Physically Injured" provision excludes from coverage "'[p]roperty damage' to 'impaired property' or property that has not been physically injured, arising out of: (1) [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or (2) [a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." (Id.) (emphasis added). The "impaired property" exclusion, however, "does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use." (Id.) (emphasis added).

## II.   STANDARD OF REVIEW

### A.   Summary Judgment

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and

---

[5] Unlike some other cases in this area, the policy at issue here does not contain a "subcontractor's exception" to the "your work" exclusion. (Doc. 1-2 at 8; Doc. 16 at 13). Moreover, Elite Homes has not asserted that the involvement of a subcontractor affects the coverage issue.

4

admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." <u>Branche v. Airtran Airways, Inc.</u>, 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-movant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986).

In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. <u>See</u> <u>Centurion Air Cargo, Inc. v. United Parcel Serv. Co.</u>, 420 F.3d 1146, 1149 (11th Cir. 2005). However, "Rule 56 mandates the entry of summary judgment, upon motion, against a party who fails to make a showing sufficient to establish an element essential to his case on which he bears the burden of proof at trial." <u>Schechter v. Ga. State Univ.</u>, 341 F. App'x 560, 562 (11th Cir. 2009) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)).

## B.    Duty to Defend

Federal courts sitting in diversity must apply the choice of law rules of the forum state. <u>See</u> <u>Miranda Const. Dev., Inc. v. Mid-Continent Cas. Co.</u>, 763 F. Supp. 2d 1336, 1339 (S.D. Fla. 2010). The parties agree that Florida law governs this dispute.

In Florida, "the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the actual facts of the cause of action against the insured, the insured's version of the facts[,] or the insured's defenses." <u>Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.</u>, 771 So. 2d 579, 580-81 (Fla. Dist. Ct. App. 2000); <u>see also</u> <u>Jones v. Fla.</u>

5

Ins. Guar. Ass'n, Inc., 908 So. 2d 435, 442-43 (Fla. 2005). If the complaint alleges facts which fairly create coverage under the policy, the duty to defend is triggered. See Trizec Props., Inc. v. Biltmore Const. Co., 767 F.2d 810, 811-12 (11th Cir. 1985) (citations and internal quotation marks omitted) (applying Florida law). "If an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured." Lawyers Title Ins. Corp. v. JDC (America) Corp., 52 F.3d 1575, 1580-81 (11th Cir. 1995) (citations omitted). However, if the alleged facts and legal theories do not fall within a policy's coverage, no duty to defend arises. See id. at 1584. Unsupported and conclusory "buzz words" in the complaint are insufficient to trigger coverage. See State Farm Fire and Cas. Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004). Inferences, too, are not enough. See Fun Spree Vacations, Inc. v. Orion Ins. Co., 659 So. 2d 419, 421-22 (Fla. Dist. Ct. App. 1995) ("[T]he allegations in the complaint control in determining the insurer's duty to defend . . . inferences are not sufficient.") (citations omitted).[6]

## III.   ANALYSIS

The parties agreed at oral argument that this case essentially boils down to one issue: whether the Croziers' amended complaint in the underlying action sufficiently alleges damage to "other property," such that the policy's "your work" exclusion does not bar coverage.[7] In relevant part, the amended complaint alleges that the water

---

[6] The parties agree that where there is no duty to defend, there is no duty to indemnify. See E.S.Y., Inc. v. Scottsdale Ins. Co., No. 15-21349-CIV, 2015 WL 6164666, at * 6 (S.D. Fla. Oct. 14, 2015) (citing Farrer v. U.S. Fid. & Guar. Co., 809 So. 2d 85, 88 (Fla. Dist. Ct. App. 2002)).

[7] The parties agreed at oral argument that any dispute regarding "loss of use"

intrusion due to leaky windows caused: "extensive damage to other property includ[ing] the frame subsurface, sheathing, insulation, drywall, and interior finishes" (Doc. 16 at 24, ¶ 14); "damage to interior portions of the home" (id. at 28, ¶ 32); and "damage to other property including, but not limited to, exterior wood framing, wood substrate, vapor barriers, insulation, drywall, and interior finishes" (id. at ¶ 33).

As such, Elite Homes argues, the underlying action sufficiently alleges "other property" damage triggering Auto-Owners' duty to defend. (Doc. 19 at 4-8). Auto-Owners, on the other hand, contends that the allegations of damage solely relate to the home, all of which is Elite Homes' "work." (Doc. 16 at 12-14). Therefore, Auto-Owners argues, the "your work" exclusion applies and precludes coverage.

While the parties agreed at oral argument that any allegations of personal property damage would be "other property" and trigger the duty to defend, even under the "most liberal and broadest of readings," the underlying amended complaint contains no allegations of damage to personal property or property other than the home itself. Cf. Bradfield v. Mid-Continent Cas. Co., No. 5:13-CV-222-OC-10PRL, 2015 WL 6956543, at *16 (M.D. Fla. Nov. 10, 2015) (insurer had no duty to defend where plaintiffs only alleged damages for the cost of repairing or replacing defective

_____

is subsumed within the overarching issues of whether the "your work" exclusion applies and whether the amended complaint sufficiently alleges damage to "other property." In addition, Elite Homes concedes in its response that the policy's mold, stucco, and impaired property exclusions "have no bearing" on the duty to defend analysis because the amended complaint contains allegations that fall outside of these exclusions. (Doc. 19 at 8). Accordingly, the Court will not address allegations regarding loss of use, nor any concerning mold, stucco, and impaired property exclusions.

work caused by latent defects, including water intrusion, and did not allege "property damage" covered by the insurance policy);[8] see also Miranda, 763 F. Supp. 2d at 1340.

_____

[8] Bradfield was decided on November 10, 2015, and thus was unavailable to the parties at the October 23, 2015 oral argument. It contains an extensive history of commercial general liability policies in Florida, which the Court finds instructive here. See Bradfield, 2015 WL 6956543, at *13-16.

With some procedural variations, but otherwise similar to this case, in Bradfield, a homeowner sued an insurer for failing to defend the construction company which defectively constructed the homeowner's custom residential home. The underlying complaint alleged that latent defects led to various problems, including water intrusion, which affected the structural integrity of the home. (Id. at *16). Judge Hodges concluded that the complaint in the underlying case "only sought damages for the repair and replacement of defective materials and/or defective work performed by [the contractor]," which did not constitute "property damage" covered by the commercial general liability policy. (Id. at *17) (noting that, as in Amerisure Mut. Ins. Co. v. Auchter Co., 673 F.3d 1294 (11th Cir. 2012), allegations of "defects in the form of repair and replacement of improper and/or defective materials, improper installation, and the use of materials that do not comport with building codes and/or plan specifications" are not "property damage"). The court emphasized the absence of any mention of damage to floors, walls, ceilings, cabinetry, doors, or appliances, much less a broader discussion of what portions of the Bradfield home were damaged by water intrusion. (Id.). In the absence of allegations of damage to specific, non-defective portions of the Bradfield home, the homeowner failed to allege any "property damage" covered by the policy. Therefore, the Bradfield court concluded that the homeowner did not establish a duty to defend, reasoning the claimed defects did not fall within the policy's definition of "property damage" and the mold exclusion excluded any other claimed damages relating to mold. (Id. at 18). Consequently, with no "property damage" alleged, the court did not reach the issue of whether a "your work" exclusion applied. See Auchter, 673 F.3d at 1309 ("Because we determine that Amelia's claim involves no 'property damage,' we need not determine whether any policy exclusions or exceptions apply.") (citations omitted).

While on its face Bradfield bears some similarity to this case, the Court notes key distinctions. Unlike in Bradfield, the Croziers have (undisputedly) alleged "property damage" under the policy through their allegations of damage to non-defective portions of the home, such as the frame subsurface, sheathing, and other structural components. (Doc. 16 at 24, ¶ 14). However, Auto-Owners argues (Doc. 16 at 12), and Elite Homes has conceded (Doc. 19 at 5), that damage to Elite Homes' own work (i.e., the frame subsurface, sheathing, etc.) is excluded from coverage under the policy's "your work" exclusion. Consequently, Elite Homes has marshalled its arguments around the "other property" allegations in the amended complaint.

The amended complaint alleges that Elite Homes constructed the residence and that defective installation of the windows led to systemic water intrusion throughout the home. (Doc. 16 at 23-25, ¶¶ 5-16). While the allegations in paragraphs 14, 32, and 33 include language such as "damage to other property," "damage to interior portions of the home," and "damage to other property including, but not limited to," these claims, read in context, relate solely to the home's structure itself, all constructed by Elite Homes. Elite Homes unequivocally states in its response that "damage to the insured's work is excluded from coverage," (Doc. 19 at 5), thus conceding that the Croziers' allegations of damage to the frame subsurface, sheathing, insulation, drywall, and interior finishes constitute damage to Elite Homes' work and fall within the "your work" exclusion. That exclusion states that "'property damage' to 'your work' <u>arising out of it or any part of it</u> . . ." is excluded from coverage. Accordingly, the damage to the structural elements of the home, which allegedly occurred due to Elite Homes' defective installation of the windows, certainly "arises" out of Elite Homes' work and is therefore excluded from coverage.

The language in the amended complaint which arguably constitutes the closest call—"damage to interior portions of the home"—is, on its face, an allegation of damage

_____

Therefore, the analysis in <u>Bradfield</u> of a distinction between a contractor's installation of defective components (which would be excluded from coverage as outside the definition of "property damage"), and non-defective components (which <u>might</u> be covered "property damage") is <u>not</u> the fulcrum on which the analysis in this case turns. Instead, due to the "your work" provision excluding from coverage any damage to non-defective components <u>installed by Elite Homes</u>, the parties—and consequently the Court—focus their attention on whether the Croziers' amended complaint sufficiently alleges damage to "other property."

to the <u>home</u>, which is (as described above) Elite Homes' work. While the Court is not suggesting that Florida law requires an underlying complaint to allege what specific personal property sustained damage, Florida law makes it clear that "inferences are insufficient to trigger coverage." <u>See</u> <u>Fun Spree</u>, 659 So. 2d at 421-22. Accordingly, as the facts are alleged in the Croziers' amended complaint, any determination that it alleges damage to personal property (in contrast to the structure of the home itself) would be a proscribed inference.

Despite Elite Homes' contentions, the facts of this case are distinguishable from those in <u>J.B.D. Construction, Inc. v. Mid-Continent Casualty Co.</u>, 571 F. App'x 918 (11th Cir. 2014) and <u>Voeller Construction v. Southern-Owners Insurance Co.</u>, No. 8:13-CV-3169-T-30MAP, 2015 WL 1169420, at *1 (M.D. Fla. Mar. 13, 2015) (citing <u>J.B.D.</u>), in which the Eleventh Circuit and Middle District of Florida respectively found a duty to defend.

In <u>J.B.D.</u>, Sun City, the owner of the fitness center, noticed damage caused by water leaks in the fitness center's roof, windows, and doors. <u>J.B.D.</u>, 571 F. App'x at 919-20. This damage included rusting steel, peeling paint, and blistering and discolored stucco. <u>Id.</u> at 920. Despite efforts to repair the damage, Sun City believed the construction was defective and refused to release the final construction payment to J.B.D. Thus, J.B.D. sued Sun City for the unpaid amount. In response, Sun City filed three counterclaims, alleging that J.B.D.'s construction defects violated minimal building codes, caused damage to the building, and caused "damages to the interior of the property, other building components and materials, and other, consequential and

10

resulting damages" and "damage to other property." Id. The Eleventh Circuit reversed the district court's holding that the insurer had no duty to defend:

> Count II of the Sun City Counterclaim, which is the statutory civil action for violations of the Florida Building Code, unequivocally states a claim for "damage to other property" caused by J.B.D.'s alleged building code violations. This reference to "other property" potentially included damage to non-fitness center property such as the adjacent Atrium building to which the fitness center was being connected or damage to other equipment, such as exercise machines, which may have been moved into the building post-construction. Count III of the Counterclaim, the negligence claim, also references "damages to the interior of the property, other building components and materials," and thus potentially includes allegations of damage to the same non-project property. Accordingly, these allegations of damage to property other than the fitness center caused by J.B.D.'s or its subcontractor's defective work potentially came within MCC Policy coverage and, therefore, triggered [the insurer's] duty to defend J.B.D. in the entire suit.

Id. at 926.

As an initial matter, unpublished opinions like J.B.D. are not considered binding precedent, though they may be cited as persuasive authority. United States v. Mejia, 154 F.3d 1297, 1298 n.1 (11th Cir. 1998) ("[u]npublished opinions of this court are non-binding precedent") (citing Eleventh Circuit Rule 36-2 (stating in part that "[u]npublished opinions are not considered binding precedent")).

Moreover, though on its face J.B.D. is similar to this case, on close analysis, distinctions arise. While Auto-Owners disputes that it has any duty to defend Elite Homes, the parties in J.B.D. agreed at oral argument that the insurer had a duty to defend in the underlying litigation. J.B.D., 571 F. App'x at 926. Thus, the Eleventh Circuit's extended discussion of the insurer's duty to defend is dicta, for "all that is said which is not necessary to the decision of an appeal given the facts and

circumstances of the case is dicta." <u>Aron v. United States</u>, 291 F.3d 708, 716 (11th Cir. 2002) (Carnes, J., concurring). And, of course, "dicta is not binding on anyone for any purpose." <u>Edwards v. Prime, Inc.</u>, 602 F.3d 1276, 1298 (11th Cir. 2010).

In addition, the Eleventh Circuit noted that J.B.D. and Sun City entered into a contract for the construction of a fitness center, to be built as an addition to an existing "Atrium" building physically joined at the buildings' roof lines. <u>J.B.D.</u>, 571 F. App'x at 919. The contract, therefore, contemplated property other than the fitness center property. Here, however, Elite Homes agreed to construct a single family home for the Croziers; there was no "existing property" to consider and none was referenced in the parties' contract.[9] Thus, the Croziers' amended complaint only references damages to the structure itself, which fall within the policy's "your work" exclusion. At oral argument, counsel for Elite Homes did not elaborate on what personal property was damaged by the defective work, instead relying on references (not alleged in the amended complaint) to hypothetical grandfather clocks and floor rugs. And, the Croziers have made no attempt to amend the complaint to allege damage to personal property.[10]

---

[9] In fact, the contract provided for demolition of "any existing living structure, accessory structure, swimming pool, septic tank, driveway, and the like." (Doc. 1-1 at 11).

[10] Given the presence of the Croziers' attorney at oral argument and the discussion as to whether the underlying complaint sufficiently alleged damage to personal property, the Court frankly expected the Croziers to seek to amend their complaint in the underlying action to allege personal property damage if they had a good faith basis to do so. However, they have not.

Voeller is even more easily distinguished. There, the underlying complaint alleged that Voeller Construction defectively built a condominium building and defectively installed its components. See Voeller, 2015 WL 1169420, at *3. Similar to Auto-Owners, insurer Southern-Owners argued that the "your work" exclusion combined with the "property damage" definition in the insurance policies precluded coverage. Id. Upon review of the underlying complaint, however, the court found sufficient facts regarding damage to "other property" to invoke potential coverage under the policies. Id. at *4. In particular, a report attached to the complaint referenced damage to an existing sea wall, as well as water intrusion into equipment and elevator rooms which might have contained equipment added post-construction. Id.

In contrast, there are no facts alleging damage unrelated to the structure of the home in the Croziers' amended complaint. Moreover, the amended complaint does not reference any evidence similar to that contained in the report in Voeller which might indicate damage to property not encompassed by the "your work" exclusion.

As Auto-Owners argues, this case is more similar to Miranda Construction Development, Inc. v. Mid-Continent Casualty Co., a duty to defend case concerning the defective construction of a residence's foundation. 763 F. Supp. 2d 1336 (S.D. Fla. 2010). Notwithstanding that Miranda did not involve an "other property" clause, the underlying complaint contained no allegations of damage to property beyond the home itself. Like here, the Miranda court considered that the complaint included the language "including but not limited to," which preceded a list of damages to the

13

flooring, trusses, roof, and walls. The court concluded that "all damages alleged in the underlying complaint are directly tied to the home and the alleged defective construction of the same by Miranda." Id. at 1340. Accordingly, such damages were not covered because of the "your work" exclusion in the insurance policy. Id.

Such is the case here. The "other property" damage specified in the underlying complaint relates only to the structure of the home. While any doubts regarding the duty to defend are resolved in favor of the insured under Florida law, the allegations of the complaint must still "fairly and potentially bring the suit within policy coverage." Jones, 908 So. 2d at 438. Nothing on the face of the Croziers' amended complaint suggests that the water intrusion damaged anything beyond Elite Homes' work, as defined in the "your work" exclusion. Any other reading of the amended complaint would require the Court to give credence to conclusory "buzz words," and to indulge in impermissible inferences.

Accordingly, Auto-Owners owes no duty to defend Elite Homes. Further, having found that there is no duty to defend, there is no obligation for Auto-Owners to indemnify Elite Homes for any settlement or judgment in the Croziers' lawsuit.

Accordingly, it is hereby

**ORDERED:**

1. Plaintiff Auto-Owners Insurance Company's Motion for Summary Judgment (Doc. 16) is **GRANTED**.

2. Defendant Elite Homes, Inc.'s Cross-Motion for Summary Judgment (Doc. 19) is **DENIED**.

14

3.   The Clerk should enter judgment in favor of Plaintiff Auto-Owners Insurance Company and against Defendant Elite Homes, Inc., declaring that under the Auto-Owners Insurance Company Policy for Commercial General Liability Coverage, Number 992322-78581888-07, Auto-Owners owes no duty to defend or indemnify Elite Homes in the lawsuit currently pending in the Circuit Court in Duval County, Florida, <u>Crozier v. Elite Homes, Inc.</u>, Case No. 16-2014-CA-3913 Div. CV-E (Fla. Cir. Ct. 2014).

4.   The Clerk should terminate all pending motions and deadlines, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 3rd day of February, 2016.

TIMOTHY J. CORRIGAN
United States District Judge

sj
Copies to:

Counsel of record